UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **TEXTRON FINANCIAL-NEW JERSEY, INC., et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**HERRING LAND GROUP, LLC,**<br><br>Defendant. | Civil Action No. 06-2585 (MLC)<br><br>**MEMORANDUM OPINION** |

**BONGIOVANNI, Magistrate Judge**

Presently before the Court is Plaintiff GF Princeton LLC's ("GF") Motion for leave to file a Second Amended Complaint. The Court has reviewed the submissions of the parties and considers GF's Motion pursuant to FED.R.CIV.P. 78. For the reasons set forth more fully below, GF's Motion to Amend is DENIED.

**I.    Background**

There is a lengthy history with regard to this matter. However, only the most pertinent facts are recited here as the Court and all of the parties are familiar with the case. Primarily at issue is a dispute regarding several lease agreements for real property and structures on that property. Over two decades ago on December 27, 1985, New Jersey National Bank ("NJNB"), as owner of the real property in question, entered into a Ground Lease (the "Ground Lease"), which has since been amended several times, with Textron Financial-New Jersey, Inc. ("Textron") pursuant to which Textron leased certain parcels of the land. (Amended Compl. at ¶7). The term of the Ground Lease extends through December 31, 2060. (*Id*.) Also on December 27, 1985, NJNB and Textron entered into a second lease (the "Improvements Lease") for certain improvements existing on one of the parcels of land subject to the Ground Lease. On

or about January 17, 2006, NJNB sold its interests in the land subject to the Ground Lease to Herring Land Group, LLC ("Herring").

Approximately five months later, on June 8, 2006 Textron initiated the instant litigation against Herring in which Textron sought a declaratory judgment regarding the method for appraising the fair market rental value of the real property subject to the Ground Lease.  (*See generally*, Compl.).  In accordance with the Ground Lease, where the parties cannot agree upon the fair market rental value of the property, the value is determined according to the appraisal procedure outlined in Section 16 of the Improvements Lease.  (Amended Compl. at ¶13-14).  Here, though Textron and Herring agree that the fair market rental value should be determined according to the appraisal mechanism set forth in the lease agreements, they disagree "on the appraisal methodology to be used and the limitations under which the appraisers are to reach their determinations."  (*Id*. at ¶16).  Thus, Textron filed suit seeking the aforementioned declaratory judgment.  Approximately three months later, Textron moved to amend its Complaint to add a claim for breach of contract based on Herring's alleged failure to fulfill its obligations under the Ground Lease.  Specifically, Textron claims that Herring breached the Ground Lease by refusing to deliver its appraisal to Textron as required.  (*Id*. at ¶24).  The Court granted Textron's Motion and in November 2006 Textron filed its Amended Complaint seeking a declaratory judgment and damages for breach of contract.

On December 21, 2007, Textron assigned its interests in the Ground Lease to GF.  On that date, Textron also assigned its rights and affirmative claims in the instant litigation to GF.  Thereafter, on February 3, 2008, Textron filed a Motion seeking to have GF substituted as Plaintiff in this matter and for leave to file a Second Amended Complaint.  The Court denied

Textron's Motion, finding that on the record before it Textron failed to provide the Court with any support for its argument that GF was assigned all rights to the subject property and choses in action against Herring, and that, even assuming that a valid assignment occurred, Textron failed to demonstrate that the proposed substitution was being offered to the Court for procedural efficiency.  Textron moved to have the Court reconsider the denial of its Motion to Substitute GF as Plaintiff and to Amend.  In response to Textron's Motion for Reconsideration, GF filed a Cross Motion asking that it be permitted to substitute as a party and/or intervene.  The Court granted in part and denied in part Textron and GF's Motion/Cross Motion.  In so doing, the Court only addressed the request that GF be permitted to substitute as Plaintiff for Textron.  The Court left for future consideration the issue of whether Textron and/or GF would be permitted to file a Second Amended Complaint.  With respect to the substitution issue, while the Court found substitution in and of itself to be inappropriate, in its discretion, the Court joined GF as a party plaintiff with Textron pursuant to FED.R.CIV.P. 25(c).  GF then filed the instant Motion to Amend.

In its Motion, GF seeks to amend various allegations, add claims for additional damages and add the following claims: (1) tortious interference with prospective economic advantage; (2) breach of duty of good faith and fair dealing; (3) breach of the covenant of quiet enjoyment; (4) constructive eviction; (5) equitable relief; and (6) tolling collection of ground house rent.  (*See generally*, Proposed Second Amended Compl.)  GF argues that pursuant to FED.R.CIV.P. 15(a)(2), which provides that leave to amend should be freely given in the interests of justice, it should be permitted to file the proposed Second Amended Complaint.  Specifically, GF contends that it "has not had an opportunity to bring a complaint on its own behalf" and claims that "as the

3

real substituted party in interest" it "should have that right[.]" (GF Br. at 3).  GF also argues that it did not unduly delay in seeking to amend, but rather just over a month after it was assigned Textron's rights with respect to the property and leases in question, it sought to be substituted for Textron and to amend the Complaint.  In this regard, GF also argues that the instant Motion is timely pursuant to the Court's October 22, 2008 Order, which amended the Court's previous Scheduling Order and gave GF until October 29, 2008 to file a motion to amend the pleadings.  GF additionally contends that Herring has contributed to the delay in this matter by "vigorously opposing Plaintiff's substitution motion[.]" (*Id*.)

Further, contrary to Herring's assertions, GF argues that its proposed amendments will not destroy diversity jurisdiction because applicable law clearly establishes that "[t]he substitution of a 'real party in interest' pursuant to Federal Rule of Civil Procedure 25(c) does not destroy diversity jurisdiction." (GF Reply at 4).  Moreover, unlike in cases where jurisdiction was lost, here, GF "is not filing a totally different action." (*Id*.)  Instead, "[t]he gravaman of the Complaint remains essentially the same except to update the causes of action to reflect issues with the property and leasehold which have arisen subsequent to the Complaint." (*Id*.)  In addition, GF argues that it would violate New Jersey's Entire Controversy Doctrine to have GF bring its proposed amendments in State Court.  GF also contends that "[i]t would be absurdly prejudicial to force GF Princeton to pursue its claims in a State Court proceeding and permit Herring to proceed in this Court where GF Princeton's right would be affected but not adjudicated." (*Id*. at 7).[1]

---

[1] The Court notes that GF also requests that the Court strike the Declaration of Bruce Snyder, Esq., filed in opposition to GF's Motion because it is "replete with legal argument." (*Id*. at 7).  The Court denies GF's request, though notes that it has disregarded the legal argument

Herring opposes GF's Motion and makes several arguments regarding why it should be denied.  Initially, Herring contends that GF's Motion should be denied because if permitted, GF's proposed amendments would likely destroy the Court's subject matter jurisdiction.  Specifically, Herring claims that while the Court's subject matter jurisdiction may not have been destroyed if all that GF "sought was to be joined or substituted pursuant to F.R.C.P. 25(c)[,]" here, "[t]he assertion by GF Princeton of its own claims against Herring, as opposed to mere substitution for Textron, will destroy diversity."  (Herring Opp. Br. at 19).  Herring contends that "[n]o prejudice could be more severe than requiring Herring to commence this action anew in State Court."  (*Id*. at 22).

Herring also argues that GF's Motion should be denied because GF does not satisfy the more stringent requirements needed to modify a Scheduling Order pursuant to FED.R.CIV.P. 16.  In this regard, Herring claims that "the liberal Foman standard does not apply where[,]" like here, "a motion to amend is made in violation of a Scheduling Order."  (*Id*. at 24 (Emphasis in original)).  Herring claims that pursuant to the Court's Scheduling Order all motions to amend the pleadings were to be filed no later than September 8, 2006, a deadline that was later extended by the Court to September 11, 2006.  Given GF's violation of the Court's Scheduling Order, Herring argues that GF must meet the "good cause" standard set forth in Rule 16 before it will be allowed to amend.  Herring contends that GF does not and cannot meet this more stringent standard.  Specifically, Herring argues that Textron was aware of all of the claims that GF now seeks to add at least as early as August 2007 if not sooner.  Indeed, Herring argues that "[t]he only 'new' fact alleged [by GF] is the submission of the CBIZ appraisal during the course of this

---

contained therein.

5

litigation, . . . [which] as an expert report rendered in the context of litigation, . . . is absolutely privileged and cannot form the basis of liability of any kind." (*Id*. at 25). Herring claims that "the only explanation offered by anyone as to why it has taken so long to seek leave to file a Second Amended Complaint is that Textron chose not to bring these claims, but that GF Princeton now wants to." (*Id*. at 26). Herring argues that that explanation is unacceptable and that GF "cannot, on the one hand, successfully urge its substitution and/or joinder in this case by urging that the determination was merely procedural, and that it has 'stepped into the shoes of Textron', while, on the other hand, claiming that none of the Court's past rulings and Orders apply to it." (*Id*. at 28).

Further, Herring argues that GF's Motion should be denied even if considered under the more liberal standards set forth in FED.R.CIV.P. 15(a). In this regard, Herring argues that GF's Motion should be denied because it is the product of undue delay, is being sought in bad faith, would severely prejudice Herring and would be futile. With respect to the issue of undue delay, Herring claims that GF "stands in the shoes of Textron, and delay must therefore be measured by looking at when Textron could have asserted these claims, not when GF Princeton could have done so." (*Id*. at 29). Herring claims that "no explanation has been offered at all as to why these claims were not asserted earlier" and contends that "[t]he inexplicable delay . . . is fatal to GF Princeton's motion[.]" (*Id*. at 29-30). Herring also argues that GF's proposed amendments are being sought in bad faith. Indeed, Herring claims that "the circumstances make it plain" that the purpose of GF's proposed amendments, which, despite being known to Textron since at least August 2007, were sought long after discovery closed and on the eve of the filing of dispositive motions, "is to harass Herring, to avoid payment of ground rent as long as possible, and to

pressure Herring into a resolution of this matter more to GF Princeton's liking." (*Id*. at 30).

In addition, Herring argues that if permitted, GF's proposed amendments would severely prejudice Herring. In this regard, Herring claims that "[t]he massive expansion of this litigation to include multiple new claims regarding events, Lease provisions, and Lease amendments never part of this case before would obviously require a great deal of addition discovery" and in all likelihood would require "another year's worth of litigation before Herring may ever hope to recover ground rent." (*Id*. at 32). Herring argues that it would be unfairly prejudiced by the substantial delay and increased costs that would necessarily result if GF's Motion is granted. Finally, Herring argues that several of GF's proposed amendments are futile because they are not solidly grounded in the record and would not survive a motion to dismiss for failure to state a claim.

## II.     Analysis

Pursuant to FED.R.CIV.P. 15(a), leave to amend the pleadings is generally given freely. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id*. However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

In deciding whether to grant leave to amend, "prejudice to the non-moving party is the touchstone for the denial of the amendment." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir.

1989) (quoting *Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)).  To establish prejudice, the non-moving party must make a showing that allowing the amended pleading would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction.  *See Long*, 393 F.3d at 400.  Delay alone, however, does not justify denying a motion to amend.  *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).  Rather, it is only where delay becomes "'undue,' placing an unwarranted burden on the court, or . . . 'prejudicial,' placing an unfair burden on the opposing party" that denial of a motion to amend is appropriate.  *Adams v. Gould Inc.,* 739 F.2d 858, 868 (3d Cir. 1984).  Moreover, unless the delay at issue will prejudice the non-moving party, a movant does not need to establish a compelling reason for its delay.  *See Heyl & Patterson Int'l, Inc. v. F. D. Rich Housing of Virgin Islands, Inc.*, 663 F.2d 419, 426 (3d Cir. 1981).  Further, in examining bad faith, like undue delay, the Court looks at the moving party's reasons for not amending sooner.  *Lyon v. Goldstein*, Civil Action No. 04-3458 (MLC), 2006 WL 2352595, at *4 (D.N.J. Aug. 15, 2006.

      Under the circumstances of this case, the Court finds that the interests of justice militate against permitting GF's proposed amendments.  While GF is correct that leave to amend the pleadings is generally freely given, there are limits to the Court's leniency.  Here, GF's Motion must be denied because Herring would be unfairly prejudiced by GF's proposed amendments.

      The Amended Complaint, which currently governs Textron and now GF's affirmative claims in this matter, is relatively straightforward and consists of only two counts:  the first of

which seeks a declaratory judgment regarding the proper appraisal method to be used to establish the fair market rental value of the property in question and the second of which asserts a claim for breach of contract pertaining to the Ground Lease.  The discovery taken in this matter was tailored to the allegations contained in the Amended Complaint.  Pursuant to the Court's Scheduling Order entered on July 9, 2007, fact discovery closed on August 31, 2007 and had therefore been completed for over five months before GF initially sought to be substituted for Textron and to amend the Amended Complaint.

Via the instant Motion, GF seeks to amend the pleadings in order to amend various factual allegations, add claims for additional damages and add six new causes of action.  GF's proposed amendments go well beyond the Amended Complaint as it currently exists and, if permitted, would necessitate discovery being reopened.  Given the extent of GF's proposed amendments it is likely that significant additional discovery will be needed.  The need for such discovery will clearly delay the resolution of this matter, which would otherwise be ready for the consideration of dispositive motions and which had already been pending for approximately a year and eight months when GF first sought to amend the pleadings.  Further, the need for such additional discovery will without a doubt appreciably increase the parties', and more importantly Herring's, costs and expenses incurred in litigating this matter.  Under these circumstances, the Court finds that Herring would be unduly prejudiced by the addition of GF's proposed amendments.

This conclusion is reinforced by the fact that it appears that all of the proposed claims were known to Textron at least as early as August 2007.  No explanation is provided as to why Textron could not have sought leave to make the amendments now proposed by GF.  Rather, GF

simply states that it seeks "to file a Second Amended Complaint to bring issues into the case regarding the Defendant's improper use of the property including those that have arisen since the First Amended Complaint was filed." (GF Br. at 2; GF Reply at 2). In addition, GF argues that it did not unduly delay in seeking leave to file a Second Amended Complaint because it moved to amend just over a month after it was assigned Textron's interests in the Ground Lease. GF further contends that it "has not had an opportunity to bring a complaint on its own behalf and should have that right as the real substituted party in interest." (GF Br. at 3). This argument, however, is not well founded and the two cases cited by GF in support of this broad contention are inapposite. GF was permitted to join Textron as a plaintiff in this matter pursuant to FED.R.CIV.P. 25(c) for procedural reasons: Textron's affirmative interests in the litigation had been transferred to it. GF's joinder was not required, but the Court in its discretion found that since (as GF itself argued) GF had essentially stepped into the shoes of Textron, GF should be permitted to join Textron as a plaintiff.

When GF acquired Textron it knew or should have known the steps Textron had taken to pursue this litigation. As a party joined under Rule 25(c), GF stands in the shoes of Textron and the Court considers GF's proposed amendments according to Textron's ability to pursue same. As previously noted, it appears that Textron could have sought to bring the claims that GF now seeks to add at least as early as August 2007, and likely sooner. GF sets forth no argument to the contrary. Rather, it appears that Textron simply chose not to pursue the amendments that GF now seeks leave to make. The fact that GF has a different point of view, however, is not persuasive. Textron's decision not to amend earlier, whether deliberate or not, is imputed to GF, and, while not essential to the Court's earlier determination, Textron's and now GF's

inexplicable delay in pursuing the proposed amendments strengthens the Court's conclusion that it would be highly prejudicial to grant GF leave to amend at this time.[2]

### III. Conclusion

For the reasons stated above, GF's Motion to Amend is DENIED. An appropriate Order follows.

Dated: March 11, 2009

s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**

---

[2] Having decided that Herring would be unduly prejudiced by GF's proposed amendments and, consequently, that leave to amend the pleadings must be denied even under the liberal standards set forth in Rule 15(a), the Court does not reach the issue of whether GF would also have had to satisfy the more stringent standards for modifying a Scheduling Order set forth in Rule 16. Similarly, the Court does not reach the issue of whether GF's proposed amendments are futile or whether Herring would be prejudiced by GF's proposed amendments because they would destroy diversity jurisdiction.