**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                               :
TEXTRON FINANCIAL-NEW JERSEY   :
INC., et al.,                  :   CIVIL ACTION NO. 06-2585 (MLC)
                               :
        Plaintiffs             :   MEMORANDUM OPINION
                               :
        v.                     :
                               :
HERRING LAND GROUP, LLC,       :
                               :
        Defendant.             :
_____ :
```

**COOPER, District Judge**

This case is a dispute regarding several lease agreements for real property ("Ground Leases"), and the structures on that property ("Improvements").  Before the Court is the Motion of Defendant Herring Land Group, LLC ("Herring") to bar and preclude damages on the breach of contract claim brought by Plaintiffs and to require the deposit of rent into escrow.  (Dkt. entry no. 178.)  The Court has carefully reviewed the papers submitted by the parties on the Motion.  (Dkt. entry nos. 178, 216, 217.)  The Court also conducted oral argument on March 30, 2011.  (Dkt. entry no. 232.)  For the reasons stated herein, and for the reasons stated on the record, the Court will deny the Motion, with relevant rulings set forth in the conclusion.

**I.    Introduction**

The relief sought by Herring on this Motion is to bar any and all damages on Plaintiffs' breach of contract claim.  Herring has indicated that success on this Motion would operate to

eliminate the breach of contract claim, thereby precluding a trial on same.  (Dkt. entry no. 17, Am. Compl. at 6; see, e.g., dkt. entry no. 246, 3-30-11 Hearing Tr. at 27, 73.)[1]

Herring argues that Plaintiffs cannot be permitted to present any damages claims, because all have been foreclosed except for the costs of defending Herring's Counterclaim, which are not recoverable alone under New Jersey law.  (Dkt. entry no. 178, Def. Br. at 19.)  In support of this argument. Herring notes the Complaint only sought declaratory judgment, and that the Amended Complaint's damage claim for breach of contract simply lists "including but not limited to incurring costs and fees to defend Herring's Counterclaims."  (Id. at 2-3.)  The attempts by Plaintiff GF Princeton ("GFP") to file a more expansive Second Amended Complaint, however, were denied.  (Id. at 3.)  Moreover, Herring contends that the Answers to the Interrogatories ("Interrogatories") supplied by Plaintiff Textron Financial-New Jersey Inc. ("Textron") stated no damages other than costs and fees, and that because GFP was also denied the opportunity to amend the Interrogatories, no damages claims remain.  (Id.)

Herring further argues that "Plaintiffs were required . . . pursuant to [Federal Rule of Civil Procedure ("Rule")]

---

[1] Because the Court addressed on the record the portion of the Motion that requests the deposit of rent into escrow, it will not address the parties' arguments on that portion here.  (See 3-30-11 Hearing Tr. at 56-57.)

26(a)(1)(A)(iii) to include in their Initial Disclosure 'a computation fo each category of damages claimed by the disclosing party', and were required to supplement those disclosures and discovery responses in timely fashion pursuant to [Rule 26(e)(1)(A)].  The rule is self-executing, and therefore bars the use of any evidence that was not property disclosed." (Id. at 19-20.)  Herring urges that it "follows automatically that no such evidence may be relied upon at trial." (Id. at 20.)

There are two plaintiffs here.  The first, Textron, initially brought this action for a declaratory judgment only, and subsequently added a breach of contract claim.  (Dkt. entry no. 1, Compl.; Am. Compl.)  Textron sold the Improvements and assigned its interest in the Ground Leases to the second plaintiff, GFP, in December 2007.  (Dkt. entry no. 64, 10-22-08 First Magistrate Judge Order at 4.)  This was approximately four months after the close of discovery in this case, on August 31, 2007.  (Dkt. entry no. 30, Scheduling Order.)  GFP became a party to the suit pursuant to Rule 25(c) in October 2008, approximately thirteen months after the close of discovery.  (See 10-22-08 First Magistrate Judge Order; Scheduling Order.)

GFP argues that "[i]t was not a party to the case when the [Scheduling] Order was entered" and that "[a]s soon as it plausibly could, after its entry, [GFP] updated and/or amended answers to interrogatories to include its damages information as

soon as it became available." (Dkt. entry no. 217, GFP Opp'n at 19.)  GFP asserts it has "suffered significant equitable and financial consequences" as a result of Herring's failure to abide by the appraisal process.  (Id. at 7.)  These consist of causing it to "incur substantial costs . . . in order to avoid default," as well as denying GFP "a stable platform from which to obtain a reasonable return on the value of its leasehold." (Id.)  GFP contends that precluding it from presenting these damages would be an "extreme" discovery sanction.  (Id. at 18-19.)  It further contends that "[t]here is and would be great prejudice to [GFP] to force it to pay ground rent without consideration of its damages which were caused by Herring's contractual breaches." (Id. at 20.)  GFP requests permission to submit its damages "for legal and equitable reasons." (Id. at 23.)

Textron joins in GFP's opposition to Herring's Motion, and further argues that it is not liable to Herring for any back rent because it sold the Improvements and assigned all of its rights and obligations under the Ground Leases and in this lawsuit to GFP. (Dkt. entry no. 216, Textron Opp'n at 1, 7.)[2]  During Oral Argument before this Court, Textron averred "[i]t's always been our position that because they won't adhere to the appraisal

---

[2] This argument was also the subject of a separate motion for summary judgment by Textron, which the Court denied without prejudice because of ambiguity in the assignment documentation between Textron and GFP.  (Dkt. entry no. 183, Textron Mot. for Summ. J.; dkt. entry no. 243, 4-29-11 Order.)

procedure, we can't set the ground rent, and so we couldn't rent it or ostensibly sell it for fair market value to anybody.  So because of that, we were not responsible for paying ground rent." (3-30-11 Hearing Tr. at 49.)

To understand the parties' sharply conflicting contentions with respect to the damages available on the breach of contract claim, the Court has thoroughly reviewed the procedural history of this case as it bears upon this motion.

## II.  Procedural History

### A.   Pleadings

This action was commenced on June 8, 2006 with a single count for declaratory judgment on the appraisal process for establishing the ground rent.  (Compl.)  The Amended Complaint, filed on November 3, 2006, contains two counts.  Count One is substantially the same; Count Two alleges breach of contract. The prayer for relief in Count One asks the Court to declare:

> a. That the Ground Lease and Improvements Lease . . . require the appraisers to take into account the remaining term of the Ground Lease and limitations on any potential additional development imposed by the existing buildings and improvements owned by Textron Financial;
>
> b. That the Ground Lease and Improvements Lease . . . . : 1) require the appraisers to take into account, in their determination of the 'highest and best use' of the property for purposes of determining the fair market rental value under the Ground Lease, the right of the existing buildings and improvements owned by Textron Financial to continue to remain in place; and 2) preclude the appraisers from determining the fair market rental value as if the underlying land were raw land without any buildings or leasehold interests; and

c. for such other and further relief as the Court may deem just and appropriate.

(Am. Compl. at 5-6.)  Count Two alleges:

23. The parties were not successful in reaching agreement within the 60-day period, as alleged above, and Textron Financial delivered to Herring an appraisal consistent with the appraisal procedure established by the terms of the lease agreements.

24. Herring failed and refused to deliver its own appraisal to Textron Financial, and thereby breached the Ground Lease.

25. As a result of Herring's breach, Textron Financial has been damaged, including but not limited to incurring costs and fees to defend Herring's Counterclaims in this action.

(Id. at 6-7.)  Count Two asks for "damages, costs and attorneys' fees, and for such other relief as this Court may deem equitable and just."  (Id. at 7.)

The Counterclaim brought by Herring asks for a judgment:

A. Specifically enforcing the provisions of the Ground Lease for the determination of Basic Rent.

B. Retaining jurisdiction for the purpose of entering Judgment in favor of counterclaim defendant, and against plaintiff, for the full amount of Basic Rent found to be due, together with interest at the overdue Rate.

C. For costs of suit, including reasonable attorneys' fees under the Ground Lease.

D. For such other relief as the Court deems just and proper.

(Dkt. entry no. 8, Ans. at 9.)  One affirmative defense to the Counterclaim states "[t]he Counterclaim Plaintiff's claims are barred in whole or in part by its failure to proceed under the contractual appraisal process established under the relevant lease agreements."  (Dkt. entry no. 11, Rep. to Countercl. at 4.)

6

After GFP purchased the Improvements from Textron, it began a series of attempts to join the action and file a Second Amended Complaint with additional counts and damage claims.  GFP first argued that "[b]y receiving the assignment and transfer of property, GF steps into the shoes of Textron Financial as the real party in interest and may pursue any and all claims brought by Textron Financial."  (Dkt. entry no. 36, First Mot. to Amend/Correct Pleadings at 6.)  GFP further asserted that "GF may bring additional individual claims against Herring, as the current owner of the Improvements and lessor under the Ground Lease.  Thus, GF is not only an assignee of Textron Financial, but also has individual claims against Herring."  (Id.)

The Magistrate Judge denied the motion to substitute because GFP failed to provide sufficient documentation of the transfer of interest from Textron, noting that GFP had not asked to be added as an additional plaintiff.  (Dkt. entry no. 42, 7-29-08 First Magistrate Judge Order at 5 n.1.)  After various unsuccessful appeals to this Court, motions for reconsideration, and renewed motions (see dkt. entry nos. 45, 56, 46, 57, 58, 59), the Magistrate Judge finally ruled that "pursuant to Rule 25(c), GF should be permitted to join Textron as a plaintiff in this matter," noting that "the Court does not at this time decide whether GF will be permitted to file a Second Amended Complaint." (10-22-08 First Magistrate Judge Order at 4.)

7

GFP then moved for leave to file a Second Amended Complaint under Rule 15(a).  (Dkt. entry no. 66, Second Mot. to Amend/Correct Pleadings.)  Similar to the previous motion, its proposed Second Amended Complaint sought punitive damages and listed separately counts for Tortious Interference with Economic Advantage, Breach of Duty of Good Faith and Fair Dealing, Breach of the Covenant of Quiet Enjoyment, Constructive Eviction, Equitable Relief, and Tolling Collection of Ground House Rent. (<u>Id.</u> at 10-12.)

Herring opposed the motion, arguing that a second amended complaint by GFP would destroy diversity jurisdiction, and further noted, as it had in its previous opposition, that GFP needed to meet the "good cause" requirements of Rule 16 because any amendment would violate the Scheduling Order.  (Dkt. entry no. 68, Herring Opp'n at 19, 23-27.)  Herring argued that "GF Princeton stands in the shoes of Textron, and delay must thus be measured by looking at when Textron could have asserted these claims, not when GF Princeton could have done so."  (<u>Id.</u> at 29.)

The Magistrate Judge denied GFP's motion for leave to file the Second Amended Complaint under Rule 15(a):

> GF seeks to amend the pleadings in order to amend various factual allegations, add claims for additional damages and add six new causes of action.  GF's proposed amendments go well beyond the Amended Complaint as it currently exists and, if permitted, would necessitate discovery being reopened. . . .  The need for such discovery will clearly delay the resolution of this matter . . . [and] will without a doubt appreciably increase the parties', and more

> importantly Herring's, costs and expenses incurred in
> litigating this matter.  Under these circumstances, the
> Court finds that Herring would be unduly prejudiced by the
> addition of GF's proposed amendments.
>
> This conclusion is reinforced by the fact that it appears
> that all of the proposed claims were known to Textron at
> least as early as August 2007.  No explanation is provided
> as to why Textron could not have sought leave to make the
> amendments now proposed by GF. . . .  GF was permitted to
> join Textron as a plaintiff in this matter pursuant to
> Fed.R.Civ.P. 25(c) for procedural reasons: Textron's
> affirmative interests in the litigation had been transferred
> to it.  GF's joinder was not required, but the Court in its
> discretion found that since (as GF itself argued) GF had
> essentially stepped into the shoes of Textron, GF should be
> permitted to join Textron as a plaintiff.
>
> When GF acquired Textron it knew or should have known the
> steps Textron had taken to pursue this litigation.  As a
> party joined under Rule 25(c), GF stands in the shoes of
> Textron and the Court considers GF's proposed amendments
> according to Textron's ability to pursue same.

(Dkt. entry no. 73, 3-11-09 First Magistrate Judge Order at

9-10.)  On an appeal by GFP, this Court affirmed.  (Dkt. entry

no. 91, 6-23-09 Order.)

## B.  Discovery

Discovery in this action closed on August 31, 2007.  (See

Scheduling Order.)  Textron's answers to the Interrogatories,

submitted November 29, 2006, state in relevant part:

> 5. Identify each and every other person having any knowledge
> concerning any of the matters which are the subject of this
> action. . . .
>
> ANSWER: . . . See Answer to Interrogatories number 1, 2, 3,
> 4, 14, 15, 19 . . . Sab Russo . . . (Mr. Russo was involved
> in certain meetings and communications with Mr. Herring and
> others surrounding the appraisal of the real property at
> issue in this lawsuit and therefore may have knowledge
> concerning certain of the claims made in the Counterclaim.)

. . .

9.  Set forth in detail, with reference to specific facts, and not in a summary fashion, the factual basis for any denial by plaintiff or any allegation of the Counterclaim.

ANSWER: . . . See, generally, Pleadings.  See Answer to Interrogatory number 7.  In addition, it is, in fact, Defendant that has refused to proceed with the appraisal process in this matter.

10.  Set forth in detail, with reference to specific facts, and not in a summary fashion, the factual basis for any affirmative defense asserted by plaintiff to the Counterclaim. . . .

ANSWER: . . . See Answer to Interrogatory number 9.

. . .

18.  Identify any and all documents provided to, consulted by and/or relied upon by any testifying expert retained by plaintiff or any of them in connection with the preparation of an expert report in the instant action.  Annex to your answer any expert report obtained by plaintiff.

ANSWER: Not applicable at present.  Plaintiff has not yet designated its testifying expert or issued its expert report.

19.  Describe any negotiations plaintiff has had with any person or entity regarding the leasing or sale of any portion of any of the Improvements on the Property.

. . .

ANSWER: . . . Pursuant to Fed.R.Civ.P. 33(d), Plaintiff responds to this Interrogatory by referring to all of the negotiations referenced by and encompassed <u>within the documents produced by Plaintiff in connection with this action</u>.  In particular, <u>Plaintiff references the documents contained in Sab Russo's files</u> and the documents memorializing James P. Herring's attempts to purchase the improvements at issue.

. . .

23.   Itemize all damages sought by plaintiff in the Amended
Complaint, and set forth the factual basis for each such
damage claim.

ANSWER: See Answer to Interrogatory number 9.  In addition,
Plaintiff has not yet quantified its damages calculations.

(Dkt. entry no. 110-2, Interrogatories at 6-7, 8, 11-12 (emphasis

added).)

On September 22, 2009, Herring brought a discovery dispute

to the attention of the Magistrate Judge and sought leave to move

to enforce the Scheduling Order and to bar further amendments to

the Interrogatories.  (Dkt. entry no. 100, 9-22-09 Herring Letter

at 4.)  The dispute began on September 9, 2009, when GFP faxed

Herring a letter stating:

We enclose herein the following information on damages
sustained by GF Princeton as a result of Defendant Herring's
conduct: (1) Charts summarizing GF Princeton's hard costs
expended for the improvements and properties (Exhibit A);
(2) An Analysis of Lost Rental Income.  (Exhibit B).  Toward
this end, please amend answers to interrogatories to include
this information and to name Sab Russo as an expert who may
testify at the time of trial.
We will also provide shortly a damages report
concerning GF Princeton's difficulty financing the
improvements as a result of the failure to complete the
appraisal process required by the contract.

(Dkt. entry no. 100, Ex. I, 9-9-09 GFP Letter.)  Attached to the

letter were various calculations of expenses and an analysis of

the lost rental income.  (Id.)  In response to Herring's letter,

GFP argued it was just updating its damages and that Sab Russo

was designated as a potential witness in Interrogatory number 5.

(Dkt. entry no. 103, 10-5-09 GFP Reply.)  GFP further argued that

11

no trial date had yet been set and there would be no prejudice to
Herring by GFP updating its damages.  (Id.)

In its motion to enforce the Scheduling Order, Herring
argued the proposed amended answers to the Interrogatories
"largely parrot[] the claims contained in the Second Amended
Complaint." (Dkt. entry no. 110, 10-22-09 Def. Br. at 2.)  Thus
this was, they claimed, merely an attempt to bootstrap in part of
the barred Second Amended Complaint.  (Id. at 10.)  Moreover,
allowing Russo's expert damage report "would require that Herring
be afforded the opportunity to retain its own expert in response
to Mr. Russo's purported report."  (Id. at 13.)

Herring argued instead that the Scheduling Order could only
be modified for "good cause," which was not shown by GFP here.
(Id. at 16.)  Pointing out that the focus is on "the diligence of
the party seeking to modify a Scheduling Order," Herring argued
the Magistrate Judge and this Court had already found the belated
entry of GFP into the case did not constitute good cause for
amending the pleadings.  (Id. at 17.)  Thus, it did not
constitute good cause to amend the Scheduling Order here, and
moreover, Herring argued, the timing of the amendments should be
viewed in light of Textron's ability to pursue them.  (Id.)

While the motion was pending, Herring provided the Court
with two other letters it received from GFP on November 9 and 10,
2009.  (Dkt. entry no. 117, Snyder Decl.)  The first letter was

an attempt to amend the Interrogatories to designate Martin Lanigan as a damages expert and to add his expert report on financing damages, which GFP mentioned in its September 9 letter. (Id., Ex. A.)  The second letter was a notice to depose Mr. Hedden and Mr. Lalka.  (Id., Ex. B.)

GFP again responded that it was "just updating discovery before trial."  (Dkt. entry no. 123, Pl. Br. & Cr.-Mot. at 1.) It claimed "it took some time to complete a compilation of damages to render them current" after its entry into the case. (Id. at 2.)  GFP further asserted it "only acted in good faith since it relatively recently stepped into this case" and it "amended answers to interrogatories to include its damages information as soon as it because available."  (Id. at 5.)

As it does in the current Motion, GFP framed the issue as a Rule 37 discovery sanction, rather than a Rule 16(b) denial of permission to amend.  (Id. at 4.)  GFP thus argued that the exclusion of its "critical evidence" would constitute an "extreme sanction," and that the "barring of damage evidence would be tremendously prejudicial to GF PrincetonTextron [sic]."  (Id. at 4-5.)  GFP also argued that because there had been no pre-trial conference held or trial date set yet, it should not only be permitted to amend the Interrogatories with its new damages information, but that the parties should be further permitted to

13

"take limited factual discovery," including the depositions of
two of Herring's witnesses.  (Id. at 6.)

Oral Argument was held on the motion before the Magistrate
Judge on December 2, 2009.  (Dkt. entry no. 126, 12-2-09
Hearing.)[3]  Herring argued:

> All one would have to read is the decision . . . with
> respect to amending the complaint where if you look at
> Paragraph 36, and you look at the terms and provisions of
> that amended complaint, all of these claims, Carrying costs,
> the various claims, and the additional damage claims, which
> we're talking about now, were incorporated in that
> complaint.  And [the First Magistrate] Judge . . . clearly
> and unequivocally said that one of the reasons there was
> undue prejudice is because they were changing the
> whole concept of the case, adding claims for additional damages,
> and she was not going to permit that . . . .

(12-2-09 Hearing Tr. at 33.)  When the Magistrate Judge expressed
some skepticism over the propriety of the information Plaintiffs
sought to include (see id. at 21, 31),  Textron explained:

> It was always our position, and my discussions with the
> other side, that our pleadings, though they were sought to
> be amended at certain points, encompassed the carrying costs
> for the buildings.  Obviously when the buildings couldn't be
> rented out because the appraisal could not be performed
> because -- and it was our position that Herring would not go
> through the appraisal process, that was always our position.
> And we produced the documents to back that up.  We hadn't
> done the calculation of what the actual damages were, but
> all the back-up documents were there.
> Mr. Russo was the realtor, he tried to rent the place
> out several times.  We had all of the proposals from the
> different people who wanted to rent the place out.  The
> taxes were actually going through Herring, they knew what
> the taxes were.  They knew what the upkeep of the buildings

---

[3] The record contains conflicting dates for when this oral
argument occurred.  The Court will use the date on the Hearing
Transcript.  (See dkt. entry no. 247, 12-2-09 Hearing Tr.)

were, they were the landlord.  They knew all these numbers.
And all these numbers were encompassed in the documents.

     And if I may, when we answered the interrogatories, and
just referred to different interrogatories, you have to
understand there was an anomalous issue in the beginning of
this where Herring did not serve requests for production of
documents pursuant to Rule 34.  And we went back and forth
about this . . .  And <u>it was their contention that the
request for production of documents were encompassed within
their interrogatories. . . . and finally I said, "Well,
pursuant to Rule 26, and pursuant to your interrogatories,
we will produce documents."</u>  And those were the documents
upon which the carrying costs would be based.

     . . . [W]e hadn't done the actual calculations.  But
they're aware of all the underlying documents and the
underlying numbers. . . first of all, they know all the
carrying costs because they're the landlord.  They know what
the taxes are because they get the tax bill.  They know what
the upkeep of the buildings are, and they also know that we
tried to rent out the buildings several times, and none of
the tenants would rent the buildings . . . .

     <u>We gave them . . . Mr. Russo's file</u>.  Mr. Russo was our
realtor.  He was the one trying to rent out the buildings.
We had several interested parties, they made offers.  But
when it became apparent that the appraisal process [would]
put into jeopardy, basically their tenancy on the property
because we didn't know what the ground rent would be, it
might make the lease infeasible, they pulled out.  And we
have damages based upon the fact that we couldn't rent the
property, but we still had to pay the carrying cost.

(<u>Id.</u> at 28-30 (emphasis added).)  Textron further clarified that

its damage contention when it answered the Interrogatories

was "[w]e have not yet quantified, here's all the documents that

we're going to use to quantify it."  (<u>Id.</u> at 32.)[4]

---

[4] Herring's response to this contention was "to suggest that
we've got documents laying out these carrying costs and the
interest expenses, and the $6 million of additional rent that's
allegedly due, or the fact that it wouldn't be financed is just
not -- it's just absolutely not accurate."  (<u>Id.</u> at 41.)

The Magistrate Judge granted Herring's Motion and denied GFP's Cross-Motion; the Order noted that:

> [P]ursuant to [Rule] 16(b) "a scheduling order may be modified only for good cause and with the judge's consent"; and the Court also noting that "[t]he Third Circuit has determined that 'scheduling orders are the heart of the case management' and cannot 'be flouted'";
>
> . . .
>
> [A]nd the Court further noting that in denying GF Princeton's Motion to file a Second Amended Complaint, both the Magistrate Judge and the District Judge recognized that GF Princeton stood in the shoes of Textron, and cited the need for additional discovery, the resulting delay in resolving the matter, as well as the increase in costs and expenses Herring would incur in litigating the matter, as being unduly prejudicial to Herring and sufficient to require the denial of GF Princeton's Motion to Amend; and the Court finding that <u>GF Princeton has failed to demonstrate that it exercised due diligence in formulating its new damage claims or identifying the additional experts it now seeks to depose</u> and has, therefore, failed to demonstrate good cause to amend the Scheduling Order . . . .

(Dkt. entry no. 127, 12-30-09 Second Magistrate Judge Order at 3 (internal citations omitted) (emphasis added).)  GFP appealed and this Court affirmed, finding the Magistrate Judge's conclusions not clearly erroneous or contrary to law because "(1) 'GF Princeton . . . failed to demonstrate that it exercised due diligence in formulating its new damage claims or identifying the additional experts it now seeks to depose,' and thereby 'failed to demonstrate good cause to amend the Scheduling Order,' and (2) 'extending discovery in this matter would be prejudicial to Herring by virtue of the further delay it would create . . . .'" (Dkt. entry no. 134, 3-3-10 Order at 3.)

16

In the damages section of the Final Pretrial Order, GFP lists "[a]s a result of Defendant's breach of contract," annual amounts "in hard cost expense damages . . . consisting of taxes, insurance, utilities, building maintenance and operations, administrative expenses, property management fees and owner costs and expenses" for years 2006 to 2009.  (Dkt. entry no. 135, Final Pretrial Order ("FPO") at 21-22 (noting "said expenses continue in an amount to be determined in 2010").)  GFP also asserts "various damages and continuing through trial in legal fees," that "lost rental damages from 2006-2009 as a result of Defendant's breach of contract in the sum of $6,351,420.00," and "financing damages from 2006-2009."  (Id. at 22.)  In support of these claims, GFP's list of damages witnesses consists of Robert Freeman, Sab Russo, Kevin Reardon, Jane Lavoie, and all representatives of the Township of Ewing with knowledge as to the tax bills of subject property.  (Id. at 31.)  GFP also lists as expert witnesses:

> Sab Russo--- Will testify as to his qualifications, opinions, and Plaintiff's lost rental damages analysis as set forth in his September 2009 report. . . .
>
> . . .
>
> Martin Lanigan--- Will testify as to his qualifications, opinions, and financing damages analysis as set forth in his November 2009 report.

(Id. at 34.)

17

In the section marked "Pending/Contemplated Motions," Herring notes that it "intends to move in limine to bar Plaintiffs' damage claim on the basis, inter alia, of this Court's Order of December 30, 2009, referred to above."  (Id. at 2.)  Herring additionally "objects to the testimony of [fact witnesses] Robert Freeman and Kevin Reardon . . . since defendant asserts that plaintiff's damage claims are barred.  Defendant also objects to the testimony of Sab Russo and Jane Lavoie to the extent it is intended to support said damage claims."  (Id. at 32.)  With respect to GFP's expert witnesses, Herring "does not object to the qualifications of plaintiffs' experts, but will object to their testimony as either irrelevant or barred by the terms of the Court's Scheduling Order and the Court's Order of December 30, 2009."  (Id. at 35.)

Herring subsequently moved in limine to bar GFP's damages on the breach of contract claim, arguing that as a result of the Court's previous orders, GFP did not have any.  (Dkt. entry no. 140, Herring Mot. in Limine at 16-17.)  The Court denied the motion and the other two separate motions in limine without prejudice.  (Dkt. entry no. 156, 6-18-10 Order.)

With this comprehensive review of the pleadings and discovery, the Court now discusses what species of damages, if any, remain in the breach of contract claim and what information, if any, may be updated and used to prove such damages at trial.

### III. Discussion

Notice pleading requires "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The standard "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

The purpose of discovery and initial disclosure is to "clarify the basic issues between the parties and . . . ascertain[] the facts, or information as to the existence or whereabouts of facts, relative to those issues." Hickman v. Taylor, 329 U.S. 495, 501 (1947).  This includes enabling a defendant "to uncover the factual basis for Plaintiff's damages claim." Directory Dividends, Inc. v. SBC Commc'ns, Inc., No. 01-1974, 2003 WL 23208804, at *3 (E.D. Pa. Dec. 31, 2003).  To that end, "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation . . . [and] either party may compel the other to disgorge whatever facts he has in his possession." Hickman, 329 U.S. at 507.

A party has a responsibility to supplement its initial disclosures and discovery responses to make them more complete:

> [a] party who has made a disclosure under Rule 26(a) --- or who has responded to an interrogatory, request for

> production, or request for admission --- must supplement or
> correct its disclosure or response: (A) in a timely manner
> if the party learns that in some material respect the
> disclosure or response is incomplete . . . and if the
> additional or corrective information has not otherwise been
> made known to the other parties during the discovery process
> or in writing[.]

Fed.R.Civ.P. 26(e)(1)(A).  "If a party fails to make a disclosure

required by Rule 26(a), any other party may move to compel

disclosure and for appropriate sanctions."  Fed.R.Civ.P.

37(a)(3)(A).  Rule 37 provides a procedure by which a party can

move to compel a more complete disclosure if it believes its

adversary's Rule 26(a) disclosures are insufficient, including a

Rule 26(a)(1)(A)(iii) computation of damages.  See id.; see also

Gillum v. ICF Emergency Mgmt. Servs., L.L.C., No. 08-314, 2009 WL

1458200, at *3 (M.D. La. May 21, 2009) (noting that defendant was

capable of making some damages computations "on its own based

upon information within its possession or control"); U.S. ex rel.

Repko v. Guthrie Clinic, P.C., No. 04-1556, 2008 WL 2498282 (M.D.

Pa. June 18, 2008).

    The reasonable expectations of the parties with respect to

the types of damages claims that remain in this action and what

information can and should be supplemented are governed by (1)

the pleadings, (2) the state of discovery when the time for

discovery concluded under the Scheduling Order, and (3) the fact

that the parties have the opportunity and obligation to

supplement discovery as the case proceeds to trial.  The Court

thus considers the Amended Complaint and what damages information was produced by the close of discovery.

The Amended Complaint contains a declaratory judgment claim and a breach of contract claim.  (See Am. Compl.)  The breach of contract claim states Plaintiff (then Textron) has been "damaged, including but not limited to incurring costs and fees."  (Id. (emphasis added).)  It also seeks equitable pecuniary relief. (Id.)  The Second Amended Complaint would have expanded the case, including the addition of punitive damages.  (See Second Am. Compl.)  But the Magistrate Judge denied GFP's motion to file a Second Amended Complaint, in part because of its attempt to "add claims for additional damages and add six new causes of action." (3-11-09 First Magistrate Judge Order at 9.)

Herring's position appears to be that the "claims for additional damages" barred in the Magistrate Judge's Order refer to, among others, the compensatory, consequential, incidental, and punitive damages in Count Two of the Second Amended Complaint.[5]  However, the Magistrate Judge did not rule, nor did the parties seek clarification, on which damage claims stated in the Second Amended Complaint were "additional" and which already

---

[5]  Indeed, Herring's Reply states that GFP's Opposition is yet another attempt to "assert consequential damage claims for the first time" when the two Magistrate Judges involved here have already denied the same.  (Dkt. entry no. 224, Herring Rep. at 4.)  A close reading of the Magistrate Judges' rulings, however, indicates no such denial was made.

existed in the Amended Complaint.  (See id.)  Moreover, the
breach of contract claim in the Second Amended Complaint differs
from that of the Amended Complaint, in that it discusses the
hotel development of adjacent land and pleads willful and
malicious conduct by Herring.  (See Second Am. Compl.)  The
Magistrate Judge's barring of the latter pleading does not affect
the viability of the claims fairly stated in the former.

Given that (1) the purpose of notice pleading is to give the
parties notice of the claims against them, and (2) the Amended
Complaint contains a breach of contract claim with a general
statement of damages, the Court cannot conclude, as Herring
suggests, that there are no damages available to GFP for the
alleged breach of contract.  Rather, despite the difference in
the wording between the Amended Complaint and the Second Amended
Complaint, and while the Magistrate Judge did prevent the
addition of "additional damage claims," the Court concludes that
general contract damages were fairly pleaded and put Herring on
notice of same.[6]  What types of contract damages claims were
disclosed in discovery and can be further updated now is a
separate question.

The issue before the Magistrate Judge on the motion to
enforce the Scheduling Order was whether good cause had been

_____

[6] The Court notes, however, that punitive damage claims
appear for the first time in the Second Amended Complaint and are
not fairly pleaded in the Amended Complaint.

22

shown to amend the Scheduling Order, and thereby to potentially re-open discovery.  (See 12-30-09 Second Magistrate Judge Order.) The Magistrate Judge only ruled that the belated formulation of GFP's "new damage claims" did not justify modifying the Scheduling Order, and did not specifically address "Hard Costs," "Lost Rental Income," or "Financing" by name.  (Id. at 3.) Additionally, the Order referred only to the "additional experts" GFP sought to depose.  (Id.)  As in the Order denying GFP leave to file a Second Amended Complaint, the Magistrate Judge did not rule, nor did the parties request clarification, on what damages information, if any, had been already supplied by Plaintiffs during discovery.

The Court thus looks to the state of the discovery when the time for discovery concluded.  The Interrogatories reveal that Plaintiffs' answer to Interrogatory number 23, on damages, states only "see Answer to Interrogatory number 9.  In addition, Plaintiff has not yet quantified its damages calculations." (Interrogatories at 12.)  However, the answer to Interrogatory number 9 states "[see, generally, Pleadings. . . .  In addition, it is, in fact, Defendant that has refused to proceed with the appraisal process in this matter."  (Id. at 8.)  The pleadings, as discussed above, state generally a claim for damages under breach of contract.

The answer to Interrogatory number 18, regarding experts, states "Plaintiff has not yet designated its testifying expert or issued its expert report." (Id. at 11.)  There is no other evidence indicating Plaintiffs attempted to supply any damages experts until September 9, 2009.  Thus, GFP will not be permitted to present any damages experts or damages expert reports. However, Interrogatory number 5 does list Sab Russo as a fact witness.  (Id. at 6-7.)  Moreover, Interrogatory number 19 asks about Plaintiffs' attempts to lease the property, which is relevant to the question of lost rental income; the answer indicates Textron produced "Sab Russo's files."  (Id. at 11.)

Interrogatory number 19 further indicates that Textron produced other documents "in connection with this action."  (Id.) As outlined in the procedural history above, counsel for Textron corroborated this statement during Oral Argument before the Magistrate Judge.  (12-2-09 Hearing Tr. at 28-30 (averring, inter alia, "we produced the documents to back that up," "all the back-up documents were there," "all these numbers were encompassed in the documents," "it was their contention that the request for production of documents were encompassed within their interrogatories. . . . and finally I said, ' . . .we will produce

24

documents.'  And those were the documents upon which the carrying costs would be based," "We gave them . . . Mr. Russo's file").)[7]

The Court concludes that at least some documents pertaining to general breach of contract damages were disclosed and remain in this action.  Plaintiffs will thus be permitted, as more fully explained below and pursuant to Rule 26, to supplement and bring current their damages evidence.  The scope of this evidence is limited, however, by the types of damages evidenced in the documents produced by Textron during the time for discovery, up to August 31, 2007.  The Court emphasizes that the Scheduling Order remains in effect, and thus the parties will not be permitted to re-open discovery, amend their Interrogatories, add any additional witnesses, or add any damage claims beyond those species of damages disclosed prior to the close of discovery.

To the extent the Motion further seeks to have rent placed into escrow, the Motion is denied for the reasons stated on the record.  (See 3-30-11 Hearing Tr. at 56-57.)

---

[7] It appears that Herring disputes either whether these documents were produced or to what extent they disclosed Plaintiffs' damages.  (12-2-09 Hearing Tr. at 41.)  The Court trusts counsel for Textron's representation that there was at least some document production to support its damage claims and the Court emphasizes that the only permissible supplementation must be of the same kind or species of documents as those that were actually produced by Textron during discovery.

**IV.   Conclusion**

For the reasons discussed above, the Court will deny the Motion.  The Court further determines that:

(1) The types of documents that were produced by Textron in discovery, prior to the close of discovery, may be supplemented and brought current by both Plaintiffs.  This includes expense items such as taxes, utilities, and maintenance, but not finance charges.  It also includes rental income sought and obtained. The Court will set a schedule for production of the supplemental documents.

(2) No expert testimony pertaining to damages will be accepted from any party, as no damages expert witnesses were named, or damages expert reports exchanged, prior to close of discovery.

(3) Plaintiffs may have their existing named fact witnesses testify to summarize what their documents show in terms of carrying costs for the property, efforts to rent, and rental sums obtained, from 2006 to the current period.

(4) Sab Russo, who was named as a fact witness prior to the close of discovery, may testify as a fact witness but not as an expert witness.  He can testify to the events, as he experienced them, during these years 2006-2011, in handling the subject property as a rental listing.  In so testifying, he may draw upon his general factual knowledge of market conditions in the area,

26

to give context to the discussions he had with prospective and/or actual tenants.  Martin Lanigan may not testify.

(5) The Court will consider conducting Rule 104 hearings prior to admitting any damages fact testimony in future trial sessions, if an opposing party requests.  There will be no additional depositions.

(6) Summaries of fact evidence may be offered under Federal Rule of Evidence 1006.

(7) Herring will not be barred from quantifying its demand for back rent, once the declaratory judgment is rendered and any necessary appraisals conducted.

(8) The Court will ultimately decide what amount, if any, of back rent and/or interest is due from either or both Plaintiffs to Herring.

(9) The Court will also determine what amount, if any, of damages or offset for alleged breach of contract or under equitable principles will be awarded to Plaintiffs.

The Court will issue an appropriate order.


       s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge


**Dated:**    May 24, 2011